Good morning, and may it please the Court. Alison LaPlante on behalf of Appellants. I'd like to try to reserve four minutes of my time for rebuttal. The Center respectfully requests that this Court reverse the District Court's judgment because the Center is plainly not seeking an advisory opinion in this case, nor should the District Court's judgment be upheld as a proper exercise of discretion to decline jurisdiction. All right. Appellants, we agree with you on both of that, and we can go back to it. Do we then go forward to the merits of the cause of action or not? Your Honor, we respectfully request that this Court do so for a number of reasons. You can go back to your other issue. With respect to the advisory opinion, no party defends the Court's ruling that this was an advisory opinion. And this Court should reverse that judgment because, one, there's an actual dispute between the parties, and, two, there's a substantial likelihood that a judgment in favor of the Center here could bring about an actual effect. So the District Court clearly had jurisdiction. And, three, it seems fairly inconsistent with our earlier ruling. On standing, absolutely, Your Honor. Now, although the Forest Service agrees with us that the Center is not seeking an advisory opinion in this case, the Forest Service nonetheless defends the District Court's decision as the proper exercise of discretion to decline jurisdiction. But that argument is flawed for a number of reasons. First, the District Court did not, in fact, conclude that it had jurisdiction but was declining to exercise it. It's evident from the ---- It thought it didn't have it at all. It thought it didn't have jurisdiction. Correct, Judge Friedland. It's clear from ER 9 and 10 that it said it did not have jurisdiction. But, second, the Forest Service arguments are premised on the assumption that this is a declaratory judgment action case. This is plainly not true. Though there is a passing reference to the Declaratory Judgment Act in the background section of our complaint, the actual single claim for relief at ER 24 and 25 and the request for relief at ER 25 and 26 are both clearly pleaded under the RCRA citizen supervision. And when they quote it in their brief, they omit that part, don't they? Yes. Third, and related, the Forest Service's focus on the Declaratory Judgment Act skews its analysis. The two cases that the Forest Service relies on are both claims brought pursuant to the Declaratory Judgment Act and not claims for equitable relief, such as the claim that we brought here. Forest Service does not cite the Snodgrass decision from this Court that we cite in our reply brief, where the Court made clear that claims that exist independent of the request for a declaration are not subject to the discretionary jurisdiction rule. Because at bottom this is not a Declaratory Judgment Act case, the Court's, quote, virtually unflagging obligation to take jurisdiction applies, and not the discretionary standard urged by the Forest Service in this case. Now, the Center, as Judge Berzon alluded to, the Center also requests that this Court reach the merits that were fully believed, not the merits of the case, but the motions to dismiss that were fully briefed below but not reached by the district court, and then relatedly deny the NSSF's motion to strike that's still pending before this Court. So that was an interesting distinction that you just made. So is this a case that's just a pure legal question, so there really is nothing other than the motion to dismiss to decide? Or what would happen if we agree with you? What further proceedings would happen? Your Honor, we would then engage in discovery. Yes, there are just motions to dismiss pending at this point. Right. No, I understand that, but it feels like a legal question, like do they have to enforce this or not? I mean, what would be the factual development that would happen in this case if the case goes forward? We need to prove a number of factors to prove, in particular, to prove an imminent and substantial endangerment. So we intend to take discovery. We intend to use experts. There could possibly be a trial, although some of these issues can get resolved on summary and judgment. And then there would be a remedy phase for the district court to determine the scope of any injunction if we were to proceed or to prevail on liability, Your Honor. So are you, the, as I understand it, the core of the government's defense is that the questions relating to hunting are really, I mean, they conceivably could regulate them, but they don't and they don't, the state regulates them. Are you, is your complaint about, are you seeking regulations of the hunting or regulations of the leaving of the carcasses and the gut piles and some, or both? I would say actually neither, Your Honor. The, this case is not asking for regulation of hunting per se. This is about the type of lead, the type of ammunition used. I understand that, but with regard to the fact, I mean, my understanding is that under the statute, if there's a disposal here, it has to be the leaving of the material there beyond its useful period. Correct. Right? So it seems that it's not actually the shooting or the use of the bullets to shoot animals. That's not disposal itself, is it? The disposal occurs once the ammunition is fired. It fragments in an animal and is left by the hunter, either because the animal is shot but not retrieved or because the gut pile is left. So what is your position as to, I mean, this is relevant to interpreting the language of the imminent harm citizen provision, i.e., what, there's case law that seems to say that it needs to be active disposal, so we need to know what the disposal is and then see what it is that we're trying to get the Forest Service to do. Certainly, Your Honor. Well, the, the disposal here occurs, as I, as I noted, once the animal has been shot. And the definition of disposal is quite broad. That has not been the thrust of the Forest Service's argument. So at some point there's a disposal, but not at the point of the shooting of the animal. Isn't that right? It's the leaving of the animal, not the shooting, right? It's, yes. The lead no longer, the case law, in terms of whether material has been discarded, right, that's sort of the relevant term, looks to whether there, as Judge Berzon, as you suggested, whether there's any useful purpose, but also whether it can be reclaimed, whether it can be recycled, and whether, in fact, it is. And none of, none of those things happen. The, the, the lead bullet fragments into pieces. It's not reclaimed. It's not. So our ultimate question is whether under our case law, which uses language of an active disposal and so on, I mean, had, what's the active disposal of something that only becomes a disposal once it is sitting there for at least some period of time? Was the Forest Service, you know, it's Forest Service land, so is there some imputed obligation to clean it up? Is that, because it's your land? Your Honor, I think the, your question actually goes to the statutory element that we need to show the Forest Service is contributing to an imminent substantial endangerment. So, so I have a question as part of that, which is, doesn't that go to what Judge I mean, I heard you made reference to, you have a lot of discovery, et cetera, to do, but isn't it really just a question of law as to whether under the meaning of contribute within the RCRA, they, they are contributing? Absolutely, Your Honor, and that is why we are urging this Court to reach that question right now, because it's been briefed fully before the District Court twice. This case has been pending for six years. The Court has all the information it needs to decide this legal question. Now, to, to get more specifically into the contributor issue, the, that is the, the primary issue, again, that the Forest Service argues about. In Hines' investment v. Angioli, which is the leading case in this Court on this issue, the Court held that to state a claim for reliability for contributing to disposal, a plaintiff must allege that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process. The Forest Service admitted at oral argument the last time we were before this Court that it has the authority to ban the use of lead ammunition. The Forest Service, in its briefing, has admitted that its authority is not in dispute. So — But banning the use of this — this is why I was trying to distinguish between what the disposal is, because it appears that using the lead ammunition is not disposal. Right? So, like, one remedy might be to require everyone to pick up the carcasses. That is a possible remedy, Your Honor. Requiring using other ammunition that's not lead is also another possible remedy. But the, but the, the disposal, again, happens once the animal has been shot and the lead has fragmented and then it is, you know, consumed by the condors and other animals. But so the, in Hines, in the quote you were reading, it seems like you've tried in your brief to focus on had a measure of control, but doesn't the or is otherwise actively involved in the waste disposal suggest that you kind of need some kind of active involvement, even if you're thinking about whether there's some control? No, Your Honor. We, we submit that because the Court used the word or, a measure of control or active involvement, that there's actually two ways in which you could establish that. What does the otherwise mean, then? What's the otherwise doing? Well, I think the, look, the, the Court was just simply saying or otherwise actively involved. I, I. But that doesn't really make sense, right? It's either, if it was just control or active involvement, then you don't need otherwise. Otherwise means that they're kind of both the same, doesn't it? I don't believe so, Your Honor. And I think it's helpful, the Forest Service urges this Court to look at some of the other decisions that sort of informed the Court's decision in Hines. And one case I think is helpful on this point about the authority to control in and of itself. And that's the Aceto decision from the Eighth Circuit. Tell me why this isn't storage of solid or hazardous waste. I'm sorry, Your Honor, could you repeat that? I mean, you keep concentrating on the disposal, but the way I'm looking at this, it's as if this, the, the Forest Service had, had a dump. And it was telling people, you know, anybody who wants to come dump any hazardous waste, come dump your hazardous waste. Because they're allowing people essentially to dispose of this lead by leaving it there. So why isn't it, we, why aren't we talking more about storage than disposal? I'm not, I'm not sure, Your Honor, that wasn't our theory of liability. I think that the material here is not being stored by the Forest Service. It's sitting there, it's sitting on the ground. Right. All right, go ahead. In the Aceto decision that this Court relied on in Hines, that was about defendants who owned relevant pesticides and supplied specifications for the formulation of those pesticides, but did not own or manage the facility where the pesticides were formulated or where the waste was stored. There the Court, the Eighth Circuit held that the, that the defendants nonetheless had the authority to control the way in which the pesticides were formulated as well as any waste disposal. But they owned the pesticide. I mean, it, it just feels like a lot more active than what is happening here, which is an inaction problem, right? What you're really complaining about is inaction. So it's a little odd with the statute that sounds more active. Your Honor, we are complaining about inaction here. What, what we're talking about is the Forest, the Forest Service argument essentially here is that it doesn't matter that there's hazardous waste being disposed of on our land. It doesn't matter that we know about it. It doesn't matter that it's been happening for decades. And it doesn't matter that we can't, we can stop it. All that matters is that we haven't done anything yet. And that can't be what RCRA intended. And if the Court looks to the RCRA guidance that we cited in our briefs, this is EPA guidance, the agency that is charged with implementing the statute. EPA, as many other courts have said, the word contributing to needs to be construed broadly. And EPA gives a handful of examples of somebody who might be a contributor, including owners who fail to abate an existing hazardous condition of which he or she is aware, and a person who owned the land. But from CERCLA, though, not RCRA? No, that's, this is, this is RCRA, RCRA guidance. It's, it's Section 7003 guidance, which is EPA's enforcement authority. But it, it's essentially the same as the Citizen Suit Enforcement Authority. And courts have said that. And, and also a person who owned the facility at the time or owned the facility at the time when, when the disposal occurred. So here we have the Forest Service who is indisputably the landowner and manager, knows this is happening, and is not doing anything about it. So it, it, it is an inaction. That doesn't mean that it doesn't meet the test for contributing to. So what, I had understood, I think, that regulation, you just read to be a CERCLA regulation. So what, can you point me to a case that says we're supposed to use that to interpret contributed in RCRA? So this is from EPA's RCRA Section 7003 guidance. We, we cite it in our, in our briefs. And there's also a hyperlink in the brief to the guidance. It's somewhat difficult to read. I, I know that courts have said that 7003, I, I believe in the United States v. Price, that's one example, that 7003 should be interpreted in the same way as Section 7002. But that language, that EPA language is actually RCRA guidance, not CERCLA guidance. And, and regarding this issue of failure to act, you, you mentioned the Marathon Oil case. I'm sorry, you mentioned the, the, the case, Hines. And Hines cites a Marathon Oil case that essentially says an allegation of a negligent omission is sufficient to state a claim. Is it, so are you saying that, that there's a claim because they failed to act? When they have the authority to control and when they have the authority to act, yes, Your Honor. Is it critical to this, to that position that there are the landowner? I'm sorry, Your Honor. If there was simply a regulator and not a landowner, would you be in the same position? I think we would be in a more difficult position there, Your Honor. We're, we're not simply asking the Federal government or ask, asking the court to hold the Federal government liable for failure to regulate. They're, they're liable here because they're the owner. Do you have any parallel cases? I mean, I know there's this Connecticut case, but it doesn't really address this problem. I mean, it assumes it may be, but it doesn't address it. We have a private landowner who is essentially, on which there is an accumulation of hazardous waste that the private landowner is either inviting or at least not dealing with. Is there any case like that under RCRA? Under RCRA. Well, I think the Connecticut Coastal Fishermen's case is, is probably the best case in terms of... It's not an active disposal problem. It just assumes it somehow. Right? Right. Well, the, the court there held the owner of the gun club facility liable. Right. But the issues that they were debating were not this issue. Right. Right? No, it was, that, that issue was not fully briefed, I don't think, in that case. That was briefed. It wasn't discussed. Is there anything else? Your Honor, there are a number of other cases that I think are helpful for this Court to, to draw parallels to. I can't cite you a case where the United States has been on the hook for, in a situation like this, but... I'm not asking for the United States. That's why I want to know about private parallels. All right. Well, that's fine. Well, that's okay. I, I will maybe be able to find one that says a little bit more parallel than the ones I  So, I was just trying to look for this 7-003 EPA guidance that you were citing. I think you said you cited it in your brief, but I'm having trouble finding where you cited it in your brief. Can you give me the full cite to what you're talking about? And if it is cited in your brief, tell me where. I'm just having trouble finding it. Sure. Is it in your opening brief? Yes, it is. All right. Why don't you give it to us when you stand up, on rebuttal. Okay. Thank you. Thank you. May it please the Court. My name is Alan Braybender with the Department of Justice, and I'm here on behalf of the Forest Service. With me at the Council table is Mr. Norman James, representing the Intervenor National Shooting Sports Foundation. I'll use the first 15 minutes, and Mr. James, the remaining five. We would submit that the best reading of the District Court's opinion is that he dismissed on two separate grounds. First— Do you have a correction to make to your brief before we even get started? I didn't exactly hear what the exchange was. So on page 18 of your brief, you say that plaintiff's complaint identifies the Declaratory Judgment Act and not RCRA as the source of the District Court's jurisdiction. You then cite — you cite — you quote, then, from it, and you omit the part where they cite RCRA. And they point it out in their reply brief, and you didn't file a correction, and you're the government. I'm just completely baffled by how you're making a jurisdictional argument based on a partial misquote of the complaint. Well, you know, Your Honor, I think our — our cite was correct. At page 14 in the excerpts of record, if that's what you're referring to, it says the requested relief is proper under the Declaratory Judgment Act. And then it's— And RCRA. Then it cites — but I think that's the attorney's fees provision of RCRA. So that's relating to attorney's fees. And that's what we said in our brief. I don't know. I thought all your brief said is they're only pursuing the Declaratory Judgment Act, and they're clearly pursuing RCRA. Well, that's — and, in fact, our brief is clear. But they're also clearly pursuing an injunction. They are. And not just a declaration. They are. And — but they say that the request is an injunction. And you also, to my mind — and I'm not sure I can prove this up at the moment, but I thought you had Colorado River completely backwards. And meta-immune. Because Colorado River is the case that says several different times that there is an obligation to assert jurisdiction when you have it. And you seem to cite it for the opposite proposition. No. Well, we cited Colorado River for the quote, but we're not making an argument under Colorado River. We're making an argument under Brilhart, because that's what the — Under what? I'm sorry. Under the Brilhart abstention doctrine, which is different from Colorado River. Mm-hmm. There's some useful language from Colorado River. That's why we cited to it. But we're not making a Colorado River argument. We're making a Brilhart argument, because that's the argument that Judge McAmey made. McAmey cited at page 5 of his opinion — I mean, the first page of the complaint, the cover of the complaint, says, Complaint for Declaratory and Injunctive Relief Resource Conservation and Recovery Act. Endangerment. Right. So there's no dispute that the cause of action is under RCRA. Yes, but you say it's not. You say that it's under only the Declaratory Judgment Act. No, that's not our — no. The relief is sought under the Declaratory Judgment Act. But the RCRA subjectively provides for the injunction. No, it does. Their complaint, again — But when they say they're suing under RCRA and RCRA provides for an injunction, why are you attempting — But we're — no, we're following, as Judge McAmey did, the plaintiff's own complaint, where they cite the Declaratory Judgment Act, 28 U.S.C. But Judge McAmey, I mean, you agree that when he said there was no advisory opinion, he was wrong, and that's what he said. He didn't say, I'm exercising jurisdiction. Besides which, I don't think this jurisdiction exists. I've never heard of this before, that you just say, I don't feel like doing it. I'm not going to issue an injunction because I don't feel like it. I mean, that's essentially what you're saying. Right. I mean, certainly the opinion could be clearer, but the opinion has four — Well, could he say that? I'm not going to issue an injunction because I don't feel like it. Well, you'd have to provide some rationale, and Judge McAmey did provide some rationale. What's his rationale? His rationale is that the requested relief would interfere with the policy choices of the other branches of government, which defer the regulation of punitive — Well, that happens every day. Well, that's — So therefore, every time that you go to a federal court and you say the government is taking this policy but it's an illegal policy, you don't — the district judge can decide whether to issue injunctive relief or not? Yes. Oh, really? The courts have the inherent authority to decline injunctions. But that doesn't — they have to consider them, though. So you're not just saying they can decline them. You're saying it's okay for them to think they don't even have jurisdiction to consider them. And that just is wrong. Well, that's what Wilton holds. And Judge McAmey cited Wilton. There are four parts to Judge McAmey's decision. Only parts one and three relate to the advisory opinion. There's a whole other part that talks about courts' unique and substantial discretion to decline declaratory and other equitable relief. On the ground that it would be inconsistent with the government's policy determinations? Is that a ground? Is that a ground for — For declining equitable relief? Well, then Judge McAmey in his fourth part of the opinion then goes into a rationale of why he is declining jurisdiction. But he clearly thinks he doesn't have jurisdiction. I mean, he says he doesn't think he has jurisdiction. He thinks it's a — it would be something that there would be no relief. It would be an advisory opinion. He thinks he has no jurisdiction. Right. And that's why the opinion could be clear. He probably should have said that he lacks jurisdiction, and if he has jurisdiction, he's declining jurisdiction. But if the court doesn't agree — Are you relying on the penultimate paragraph before the conclusion where he says the problem is that you should abstain from an improper intrusion into the domain of the USFS where the federal judicial power is invoked to pass on the validity of actions by the legislative and executive branch? But this is not a constitutional argument. This is a statutory argument that says that the Congress says you can't do X or you have to do X, and the Forest Service isn't doing what they were told to do by Congress. Is there any authority, particularly in an unconstitutional context, for a judge to say, oh, the policy of the government of the executive branch prevails over the directive of Congress? Well, district judges have this discretion. Really? Give me a case. Well, I want one case. A statutory case. One. Wilton. Well, I don't know. I guess Wilton is not a statutory case. Yeah, right. I want a statutory case in which a district court has the authority because the executive branch is taking a policy position to say I'm not going to enforce a congressional statute. I cannot set a case, but the Declaratory Judgment Act is quite wrong. Are you really standing up and making that argument on behalf of the United States government? Your Honor, if this Court thinks that Judge — No, I want to know if you're actually standing up and making that argument. That is our argument, Your Honor. But if — So you're ignoring that they're seeking an injunction under RCRA? They're not seeking an injunction under RCRA. They're seeking an injunction pursuant to the Declaratory Judgment Act. That's what they say in their complaint. That's what Judge McEnany relied on. If you look at page 2 of Judge McEnany's decision, he's relying on the plaintiff's complaint. But if the Court disagrees, then we would suggest that the Court should remand without addressing the RCRA issues. It's highly unusual for an appellant to ask a court of appeals to direct how a district judge is going to or should rule on a motion. It's not highly unusual. It comes up all the time. Well, it comes up — — as to whether, when you're dealing with a 12B6 on the complaint and there's no — and it's de novo, should we remand or should we decide the merits issue ourselves? And I could probably find, you know, 200 cases, instances in which we've done it in the last 50 years. Do you doubt that? I haven't found one where an appellant has made the request. I've seen many cases where the appellee has requested as an alternative basis for affirmance. Yeah. So? Well, it's out of respect, again, for district judges. You affirm a district judge on an alternate basis out of respect for its judgment. But it's a completely — it's the flip side of the coin. This Court generally doesn't direct how a district judge is going to or should decide a pending motion. It only — this Court only does so in the context of mandamus. And that's really what the plaintiffs are seeking here is a de facto petition for writ of mandamus without satisfying the factors. But if this Court does address — It's sometimes quite attractive not to do it. It's just more work on our part, and — but in this instance, it's been developed. Anyway, go ahead, Mr. Maris. Well, and it's been pending since 2012. Am I right? This case has been pending for — This case has been pending since 2012. That's correct. If this Court does address the Rikra claims, it should order the district court to dismiss them with prejudice because the complaint fails to allege facts showing that the Forest Service is a contributor to the alleged endangerment of condors. And the alleged what? First of all, the case is about more than condors, so let's not do that. But go ahead. Okay. Well, in Hines Investments, this Court, as a matter of first impression, decided what the meaning of the word contributor is. And it held that a contributor is someone who had a measure of control over the waste of time. Okay. We're starting with a landowner. I guess you have some dispute about that. But do you dispute that? That the Forest is the landowner? Yes. Yeah. It's the United States that is the landowner. All right. So what? And the Forest Service is a regulatory agency. It doesn't exercise — it doesn't have plenary authority as a private landowner might. As a regulatory agency, the Forest Service can only exercise the authority and regulate what Congress tells it to regulate. And one of the things Congress told the Forest Service to leave to the states was the management of wildlife and hunting. What about junk on its land? I mean, if somebody came — if there — that's why I was trying to draw this distinction. I understand the problem about the shooting. But now there's junk on the land, which is assertively hazardous. And the disposal, actually, is not the shooting, but the leaving of the junk on the land. If this was a private entity and there was, you know, a big plot of land and there were a bunch of people, you know, dumping horrible stuff on this land and the landowner knew it and someone said, you know, you're — and there was a suit brought and said, you know, you've got to do something about this junk in your land. You're contributing, I think, to the storage of hazardous waste. What's the answer? Is there any case like that? Well, being a passive landowner isn't sufficient under this Court's Hines precedent. Well, is that right? That's what I'm asking you. I don't know the answer to that. Yes. And in fact, Hines says — Hines wasn't about landowners. Right, but — It was sort of backed in the other direction. I mean, it was somebody who was back here instead of up here. Right. Hines is all about active involvement and being a passive landowner is not active. So your position, the government's position, is that if you had a private landowner and they put a sign up, anybody want to dump hazardous waste here, come on, and a whole bunch of people came and dumped hazardous waste, that would be — they're not active. No, they would be. That would be the act of putting up that sign. All right. So no sign, but they know it and everybody's doing it. Right. And that's because knowledge is not an element to RCRA. RCRA is a strict liability statute, right, so knowledge doesn't matter. And they're not contributing to the storage of the hazardous waste by providing the space for it and not doing anything about removing it? There is no such act of involvement. And the Honeywell decision cited by this court in Hines was all about passive landownership not being sufficient. So I think you said Hines is also about landownership, right? No, you didn't mean to, I hope, because it's about manufacturing. I did not mean to say that. Manufacturers of dry cleaning equipment. Right. If I said that, I was wrong. I didn't mean to say that. Okay. So what do you want to say about Honeywell then? That it held that a passive landowner is not a contributor under RCRA, and that's one of the cases that this court cites in Hines. So that's your ultimate legal position, that a landowner, where hazardous waste is accumulating, is not an active contributor within the meaning of Hines to either the storage or the disposal. Right, unless there's some active element, right. But it's not realistic. Is the active like the inviting? So like if you open a dump and say, come dump, that's different somehow? Is that kind of the distinction you're trying to make? Yes. And it's not really a realistic scenario where a landowner is just going to allow people onto his or her land. It is. That's why you have all this, you have many, many years of CERCLA. Well, but those are actions. Those are actions. No, they're not. They're usually landowners who just have some junk on their land. And that's why Congress and CERCLA, for instance, separated. But it's a realistic scenario. Whether it's a realistic scenario that comes within the statute is a different question. Right. So in CERCLA, it is a good contrast because in CERCLA, Congress separated out landowners as potential, as separate class. But in RCRA, Congress didn't do that. It made owners liable only to the extent they have some active involvement in the storage, disposal, transportation, handling of waste. But why isn't providing land for something not an active involvement in storage? The Forest Service is not providing the land. These are public lands. They're open to the public unless they're closed by Congress or closed by the agency after pursuing all the, or clearing all the statutory and regulatory hurdles for closing the land. Doesn't Hines also make reference to the Marathon Oil case? That's a Fifth Circuit case. And there it involves materials. It's a defendant railroad company. Their argument is that they're not in possession or control of the hazardous materials. They weren't transporting the materials when they were released. They played no role in their disposal. Yet the court in that case ruled that the plaintiff had stated a claim based on the defendant's alleged control over the practices at the site where all this stuff was leaked. So isn't this more analogous to that kind of a case? No. I think in Marathon, in fact, the railway company transported the hazardous waste on its cars and controlled the loading and unloading practices, which then caused- Says it wasn't in possession or control, that it was not transporting the materials. You say it says it was transporting the materials? We're talking about the same Marathon Oil case, yes. Well, it's 164 Fed Sup, 2nd, 914. Correct. And you say they're saying they weren't transporting? No, that they did transport. Right. And you're saying it says it did transport. I apologize. Yes. Correct. If you want to leave five minutes for your colleague. I do. Thank you. Thank you. I'm always very sympathetic to the person sitting there. I always say, what do you do in that instance? You make faces. Thank you, Your Honor. May it please the Court, my name is Norman James. I'm with Fenimore, Craig, and Phoenix, and I represent the National Shooting Sports Foundation. Obviously, we stand by our brief. I have a limited amount of time today. Let me just focus again on the issue of whether there is a disposal of solid waste, because, really, that's the big issue here. I mean, RCRA, again, is broadly written, but it applies to the generation and disposal of waste. It doesn't apply to honey. And that's, I think, what makes this case. Also to storage. Pardon me? Also to storage. And to generation, transportation, storage, and disposal. That's correct, Your Honor. Again, it's a broad statute. It's intended to be a cradle-to-grave, set up a cradle-to-grave system to manage hazardous waste. It also has sections that deal with solid waste. The argument here is hunting is producing solid waste. Obviously, we disagree. So what would be wrong with, as Judge Friedland mentioned, just requiring them, because it does talk about disposal, just requiring them to take the carcasses out? And that's a very good point, Your Honor. The complaint, if you look at the complaint, attacks the use of lead ammo. It says hunters that fire a game using lead ammunition are disposing of a solid waste. That's the basis of their case. They mention the so-called gut pile problem where a hunter shoots a deer. He field dresses the animal. He leaves part of the carcass behind that has trace amounts of lead in it. It gets consumed by condors and other scavengers. That's right. That's the basic issue. Well, I mean, one way to cure what, I mean, I think it's common ground, I hope it is, that the disposal is not the shooting. It is the leaving it there. But the fact that, I mean, there will be different ways to cure the leaving it there. One of them is not to put it there to begin with, not to do the shooting. But I understand. So, I mean, maybe there's something technically wrong with the complaint, but that doesn't seem a very good ground. It might be a ground for telling them to go amend their complaint, but it's not going to dispose of the case. So what else? Well, Your Honor, I think if I could expand on that a little bit because I think it does go to the heart of the case because, again, the allegations are that hunting, discharging a bullet made of lead is a disposal under RCRA. But it's not. It's the leaving of the carcass. So, I mean, could the Forest Service say anyone who uses our land for hunting with lead bullets needs to take out the carcass? You can take out the carcass, Your Honor, or you can bury the carcass so scavengers can't get to it. Okay, fine. So what's the problem with a rule like that? Well, but that's, again, that's not the essence of what this suit is about. All right, let's assume that they go back and amend. I don't want to bicker about whether it's in there or isn't in there. So the question is suppose we say it's not the shooting, it's the leaving. Go amend your complaint. Then what? Well, the problem, Your Honor, is that that really is, as I said, that's the lawsuit. All right. If that's all you want to say. Sorry, go ahead.  So say you're representing these hunters. So would there be a problem? Do you think that RCRA could cover the idea that the Forest Service should say that hunters should take out the carcasses? Well, first, I don't think it does. And the reason why is, again, if you look at the case law that deals with hunting, and I think the Court's already alluded to this, first, the discharge is not a disposal. Okay, we're all in agreement about that. So what about the leaving of the blood and the lead? Well, let's look at what happens when the bullet goes. So the bullet's shot at a deer, okay? It misses the deer. It ends up out in the forest somewhere. There's no expectation the hunter is going to retrieve the bullet. He can't even find the bullet. It's probably shattered into pieces. But then again, there's no danger to anyone. Well, we're talking about the disposal of the carcass. Right. Next, you shoot a deer, the bullet goes through the deer, same result. The problem is, at least according to the allegations, the problem is if a deer is shot and escapes and it runs off and the hunter can't find it and it dies in the forest, it's eaten later by scavengers. Right. Again, there's no active disposal. Can you tell me, as a non-hunter, what a gut pile is? Pardon me? Can you tell me, as I am a non-hunter, what is a gut pile? Essentially what it is, Your Honor, is if you have an animal, you can either carry it out of the forest or you can do what's called field dressing, where you essentially cut the meat off the carcass and you leave the carcass. Right. So that just eliminated your point because, in fact, it isn't true that you either take it or he runs away. And instead, there are. . . You're right. And that's the third. And now he's getting to that, Your Honor. That's the other problem. But, again, there isn't. . . In contrast to the gun club cases where there's a long-term accumulation of spent lead, we're talking about a single animal that has fragments of lead in it. There's no expectation that the hunter. . . Again, this goes back to the point you're talking about. It's not the lead. It's the carcass. The carcass is solid waste. But, again, the suit deals with lead ammo. And the relief they're seeking is a ban on lead ammunition, Your Honor. It's the carcass with the lead in it. So, I mean, you can't. . . The fact that the lead is in it is what makes it a hazardous waste. But the lead is not. . . No, it's not a hazardous waste. The issue is whether it's a solid waste. Solid waste. Okay, fine. And to be a solid waste, it has to be discarded. So my understanding is they're saying the Forest Service needs to do something to stop violating RCRA. And the way they should do that is do something about gut piles or carcasses with lead in them. Now, whether we say the problem is the lead or the carcass, it seems like. . . I mean, maybe you can tell me as a practical matter, is there a problem for hunters if they have to take the whole carcass away? It's difficult. But, again, and I guess I'll just conclude with this thought. I'm going way over and I apologize for that. Again, the fundamental issue here with respect to the plaintiffs is they don't want a regulation that says you can't leave behind a gut pile. Well, if they want, it's a different question. The question is what can they get. And, I mean, the argument that the Forest Service doesn't have any obligation to stop the shooting  is an argument you can make on the merits when you get to the merits. But very simply, Your Honor, they're asking you to in effect grant or deny. . . All right. And we can say no. We can say no. It's not going to work with regard to looking at the shooting as the disposal. That's not the disposal. And they're asking you to deny our motion where we're saying shooting is not disposal. They're asking you to say no, that's not correct. All right. And we can say you're both wrong. Okay. All right. Thank you. Thank you. A few brief points on rebuttal, but I first want to get back to the Court's questions. Judge Friedland, it's page 38 of our opening brief that has the site to the EPA enforcement. It's from the Office of Enforcement and Compliance. It's U.S. EPA guidance on the use of Section 7003. And there is a hyperlink in our briefing on that. And what kind of document is that? Do we owe any deference to it? Your Honor, I'm not aware of any case that has applied any sort of formal deference to this particular document. But it is an EPA guidance document. And, again, EPA is the authority, not the Forest Service, on how RCRA should be interpreted.  Now, Judge Berzon, you had asked for a case that I was having a hard time thinking of that fit within your fact scenario. And I would point you, in our briefing, we cite to the Waste Industries case, which is a Fourth Circuit case. And there, among the defendants were owners of property who had leased land to others to operate a landfill where the contamination occurred.  What about the gun, you know, the shooting, the gun club cases? I mean, the difference there is that they're specifically inviting the people to come shoot, but they are specifically inviting them to shoot with lead? I'm not sure whether they're specifically inviting them to shoot with lead, but those are the – that is the preferred choice of some people. And that were the facts of – that was the facts of the case. So why – I mean, would they be parallel as well in the sense that the gun club owner isn't doing any shooting with lead? So if that's what's required, it's not going to work, but the gun club owner isn't taking the lead away. That's correct. And that's why we cite to the Connecticut Coastal Fishermen's Association case, because it is, I think, parallel, at least at some level. Another case that I – I think an enforcement or regulation from EPA about this. So EPA usually enforces RCRA. So it seems like maybe they're the ones who are supposed to have a regulation about leaving lead bullets around. The center has done a number of things, Your Honor. The center has requested the state of Arizona ban the use of lead ammunition. The state has not – But you see it going – this is why – Why he's saying that that's what you're asking for. Right. Because it seems like you're – this is a disposal case, right? So maybe there are different ways to get at it, but it seems like it's not the lead bullets per se. It's the lead bullets left in the carcass on the ground that's your problem. So maybe EPA should have a regulation against hunters leaving carcasses. EPA has declined to regulate this. Now, the federal government is no stranger to regulating lead. And as we cite in our brief, since 1991, there's been a nationwide ban on lead. Do you think your brief, your complaint as it stands, is consistent or could give rise to an injunction that doesn't deal with the shooting of lead bullets, but with the leaving of the carcasses on the ground? And if not, could you amend the complaint to do that? Do you – in other words, is there some reason why it's completely necessary to your whole theory of this that you have to regulate the shooting? Your Honor, we have not gotten to the phase of expert discovery or – I want to know about your complaint. Well, the complaint asked for the court to restrain the Forest Service from contributing to an imminent and substantial endangerment. It doesn't say to stop people from shooting with lead bullets. It doesn't say that, no, Your Honor. The court, of course, has discretion in fashioning injunctive relief, and we would like to be able to have the opportunity to present evidence as to what that type of relief should be. So there's some entity that gets a hunting permit. It's like the tour leader or something. The commercial guides, yes. The commercial guides. Have you tried suing them under the citizen suit provision? No, Your Honor. Aren't they more active in doing this? Your Honor, the commercial guiding outfits, I would say, are probably a smaller percentage of the problem on the Kaibab National Forest as opposed to just individual hunters who go out recreationally to hunt. Okay. Thank you both for that clear argument. Thank you. The case of Center for Biological Diversity v. United States Forest Service is submitted, and we are adjourned. Thank you.
judges: Berzon, Friedland, Cardone